**PAUL SCOTTON CONTRACTING COMPANY, INCORPORATED, a Delaware corporation, et al., Plaintiffs Below, Appellants,**

v.

**MAYOR AND COUNCIL OF the CITY OF DOVER, and the City of Dover, a municipal corporation of the State of Delaware, Defendants Below, Appellees.**

Supreme Court of Delaware.

Dec. 12, 1973.

---

John J. Schmittinger, of Schmittinger & Rodriguez, Dover, for plaintiffs below, appellants.

Januar D. Bove, Jr. and Bertram S. Halberstadt, of Connolly, Bove & Lodge, Wilmington, for defendants below, appellees.

Before HERRMANN, C. J., CAREY, J., and CHRISTIE, Judge.

HERRMANN, Chief Justice:

In this class action by property owners to have declared invalid special assessments for sewer and water facility improvements, and for an injunction against enforcement of liens levied as a result thereof, the Court of Chancery granted summary judgment in favor of the defendants, Mayor and Council of the City of Dover and the City of Dover (hereinafter "Dover"). See, Del.Ch., 301 A.2d 321. The plaintiffs appeal, challenging the sufficiency of notice and opportunity to be heard under the Due Process Clause of the Fourteenth Amendment to the United States Constitution and Article I, § 7 of the Delaware Constitution, Del.C. Ann.

I.

The plaintiffs are two corporations and two individuals who own parcels of real estate abutting the right-of-way wherein the improvements were made. The plaintiff Paul Scotton Contracting Company, Incorporated (hereinafter "Scotton") and the plaintiffs George J. and Beulah D. Pyott (hereinafter "Pyotts") own property located in the Martin-Cowgill Street area of Dover; the plaintiff Burger Construction Company (hereinafter "Burger") owns realty in the Northwest Dover Heights vicinity.

The Martin-Cowgill Street area was annexed by the City of Dover in 1962; Northwest Dover Heights was annexed the following year. The parties have stipulated that "it was generally known then and is now generally known, that the principal reason for desiring annexation is to acquire the City's sewer and water facilities, and that, if acquired, payment therefor would have to be made by assessments". Construction on the sewers, water main system, and transmission lines to these annexed areas was completed by 1966.

Subsequently, the City Council at its December 12, 1966 public meeting adopted a resolution levying special assessments for the cost of the construction against property owners whose land fronted on the improvements. The properties of plaintiffs Scotton, Burger, and the Pyotts were among those assessed.

The individual levies were determined mathematically by multiplying the predetermined rate per foot times the number of feet of real estate abutting the construction area. This method of calculating such assessments is called the "front foot method".

The plaintiffs make two principal arguments on this appeal: (1) that the assessments and the resultant liens are invalid because the enabling Law (36 Del.L., Ch. 158, § 26, part of the Charter of the City of Dover) did not expressly require notice and hearing; (2) that constructive notice by newspaper publication was constitutionally inadequate under the circumstances of this case.

II.

It is settled that special assessments may be made to defray, totally or partially, the cost of local improvements and that the use of the front foot method in determining assessments does not, *per se,* violate the proscription against the taking of property without due process of law. French v. Barber Asphalt Paving Co., 181 U.S. 324, 21 S.Ct. 625, 45 L.Ed. 879 (1901); English v. Mayor, etc. of City of Wilmington, 2 Marv. 63, 37 A. 158 (1896).

The validity of such assessments does not depend upon the character of the authority making them: special assessments may be valid whether they are authorized by the State Legislature, French v. Barber Asphalt Paving Co., 181 U.S. 324, 21 S.Ct. 625, 45 L.Ed. 879 (1901), or made under the authority of a municipal charter or ordinance, Cass Farm Co. v. City of Detroit, 181 U.S. 396, 21 S.Ct. 644, 45 L.Ed. 916 (1901). And the power to make assessments may constitutionally be delegated by the Legislature to municipal authorities. Hancock v. City of Muskogee, 250 U.S. 454, 39 S.Ct. 528, 63 L.Ed. 1081 (1919).

■ Although notice and opportunity to be heard must be afforded at some point before charges become irrevocably fixed, under the front foot method a property owner is not constitutionally entitled to be heard in advance on the question of the nature and extent of the benefits conferred by the improvements. Withnell v. Ruecking Construction Co., 249 U.S. 63, 39 S.Ct. 200, 63 L.Ed. 479 (1919); English v. Mayor, etc. of City of Wilmington, 2 Marv. 63, 37 A. 158 (1896). Employing a fixed rule, such as the front foot method, removes any discretion in determining which landowners are benefited by the improvements; be definition, the front foot method conclusively establishes that those whose lands abut the improvement are benefited and therefore subject to assessment. Thus, preliminary notice and hearing would be meaningless since the class of landowners benefited has already been determined. However, because discretion is exercised in determining the amount of the assessment, it is manifest that due process requires that members of the class be given notice and opportunity to object at some stage in the assessment procedures.

■ The plaintiffs argue that because the statutory authority, under which the instant assessments were made, contains no express provision requiring notice and hearing, the assessments and liens are void. While such rule obtains in some jurisdictions [see e. g. Remsen v. Wheeler, 105 N. Y. 573, 12 N.E. 564 (1887)], the United States Supreme Court has held that express statutory provisions for notice and hearing are not mandated by due process. Paulsen v. City of Portland, 149 U.S. 30, 13 S.Ct. 750, 37 L.Ed. 637 (1893). It was there concluded that the power conferred by statutory authority was implicitly subject to all constitutional restrictions, of which the requirement of notice and opportunity to be heard was one. We agree with that rationale. Accordingly, we find no constitutional infirmity in the enabling Statute.

### III.

■ In the instant case, newspaper publication was among the various means by which landowners had notice. The plaintiffs contend that, as to them, this form of constructive notice did not comport with standards of due process under the circumstances of this case. We agree.

In Mullane v. Central Bank and Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), a trust settlement proceeding, notice was given to the beneficiaries by newspaper publication. It was held that such notice met the requirements of due process for those beneficiaries whose whereabouts were unknown, but was constitutionally deficient as to those whose places of residence were known or could have been easily discovered by trust officials. The Court noted that the means of notice, most reasonably calculated to reach those individuals whose addresses were known or obtainable, was by mail.

This rule has been applied in similar fashion to condemnation proceedings, Walker v. City of Hutchinson, 352 U.S. 112, 77 S.Ct. 200, 1 L.Ed.2d 178 (1956); Schroeder v. City of New York, 371 U.S. 208, 83 S.Ct. 279, 9 L.Ed.2d 255 (1962), and tax lien foreclosure actions, Covey v. Town of Somers, 351 U.S. 141, 76 S.Ct. 724, 100 L.Ed. 1021 (1956). More significantly, the rule has been applied in a situa-

tion involving special tax assessments. See Wisconsin Electric Power Co. v. City of Milwaukee, 352 U.S. 948, 77 S.Ct. 324, 1 L.Ed.2d 241 (1956) and 352 U.S. 958, 77 S.Ct. 351, 1 L.Ed.2d 317 (1957).[1]

Thus, as a matter of general constitutional law, it is settled that where names and addresses of the persons to be notified are known or available, newspaper publication alone will not suffice as a mode of notice. In the instant case, the plaintiffs' names and post office addresses could have been easily obtained from various sources, such as tax rolls or deed records. Any inconvenience to the assessing authority in this regard was negligible when measured against the consequences to the property owners.

Determination of the publication issue alone, however, is not dispositive of the instant case, for the record indicates that publication was not the sole method of notice.

It is undisputed that after the request for annexation by residents of the area here involved, the City of Dover informed the residents that it would develop a program to help solve problems caused by their inadequate sewer and water facilities. The City sent a brochure to each resident and property owner in the area, among whom were the plaintiffs Scotton and Pyotts, stating the estimated cost to property owners per front foot for the sewer and water line construction.

In addition, a copy of the Resolution of the City Council of January 27, 1960[2] was sent to residents and property owners affected by the assessments. Numerous public meetings were held by the City Council, at which members of the area had the opportunity to voice opinions regarding proposed actions of the Council. Although such meetings and their agendas were publicized in local newspapers and on radio, the plaintiffs never appeared to protest the assessments. Also, the day following the public meeting at which assessments were made against lands including that acquired by the plaintiff Burger, a public notice of the action appeared in local newspapers. Moreover, all plaintiffs, as well as other residents and property owners, received bills for the construction.

These facts manifest a course of conduct on the part of the assessing authorities reasonably calculated to apprise the plaintiffs that their rights were to be affected. We need not decide, however, whether these facts alone measure up to the requirements of due process, for the record shows that the plaintiffs also possessed actual knowledge of the improvements.

The record reveals that the President of Scotton observed the construction, but had the impression from workmen at the scene that the work was a transmission line. He asserts that, for this reason, he did not believe his corporation would ever be assessed. To the same extent, it is undisputed that Pyotts saw the work being done

1. In two memorandum decisions, the Supreme Court vacated and remanded a State Court ruling for consideration in light of Walker v. City of Hutchinson, 352 U.S. 112, 77 S.Ct. 200, 1 L.Ed.2d 178 (1956). On remand, the State Court applied the rule. Wisconsin Electric Power Co. v. City of Milwaukee, 275 Wis. 121, 81 N.W.2d 298 (1957). See also City of Houston v. Fore, Tex.Sup., 412 S.W.2d 35 (1967); Fritz v. Board of Trustees of Town of Clermont, 253 Ind. 202, 252 N.E.2d 567 (1969); Ridenour v. County of Bay, 366 Mich. 225, 114 N.W.2d 172 (1962); Meadowbrook Manor, Inc. v. City of St. Louis Park, 258 Minn. 266, 104 N.W.2d 540 (1960); Smith v. City of New York, 30 A.D.2d 122, 290 N.Y.S.2d 306 (1968); Pratt v. Water

District No. 79, 58 Wash.2d 420, 363 P.2d 816 (1961).

2. That Resolution contained fifteen numbered paragraphs relating in detail the policy of the City of Dover, concerning areas annexed, or to be annexed, and areas within the City limits previously unassessed. Among other things, the Resolution dealt with services and improvements (including sewer and water facilities) to be provided by the City, and the estimated charges therefor. Procedures for determining the assessments were described, and it was stated that the charges would become a lien on the property assessed and, as such, entered on the tax records of the City of Dover.

but thought it would be paid for by a bond issue. Likewise, since a title search disclosed no liens against the realty, Burger's President assumed the sewer improvements had been paid for. It is thus manifest on the record of this case that the plaintiffs had actual knowledge of the construction, but due to their own erroneous assumptions and conclusions they failed to inquire and to object seasonably.

The law is clear that a property owner who knew, or should have known, that work was being done on a local improvement to his benefit and that assessment therefor was likely, but who fails to object until the improvement is completed, will be barred from later attacking the assessment. 2 Antieau, Municipal Corporation Law, § 14.49; see also Catts v. Town of Smyrna, 10 Del.Ch. 263, 91 A. 297 (1914), aff'd. 10 Del.Ch. 490, 99 A. 281 (1916). Such knowledge on the part of the assessed landowners precludes a later attack by them on notice procedures. Kraushaar v. Zion, N.Y.S., 196 Misc. 437, 94 N.Y.S.2d 449 (1949); Pratt v. Water District No. 79, 58 Wash.2d 420, 363 P.2d 816 (1961); Fritz v. Board of Trustees of Town of Clermont, 253 Ind. 202, 252 N.E. 2d 567 (1969). Whether the theory is characterized as estoppel, waiver, laches, or a variation of inquiry—notice, is not here material; the underlying rationale is essentially the same.

We hold that the totality of the circumstances in the instant case, including the mailed copy of the Resolution, the brochure, the public meetings, the newspaper publication and the plaintiffs' actual knowledge, constitutes notice and opportunity to be heard sufficient to satisfy the requirements of due process under the Fourteenth Amendment and the Delaware Constitution.

The judgment of the Court of Chancery is affirmed.